JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Nathaniel Pollard ("Pollard"), appeals his conviction for aggravated burglary. Finding no merit to the appeal, we affirm.
 {¶ 2} In November 2003, Pollard was charged with aggravated burglary and aggravated robbery, each containing a firearm specification. The matter proceeded to a jury trial, where the following evidence was presented.
 {¶ 3} On August 17, 2003, the victim, Maichal Harris ("Harris"), testified that he was alone at his residence when his exterior door opened and someone put a gun through his interior gated door demanding entry into the house. When Harris opened the door, three men entered, demanding their drugs. Harris testified that many drug transactions occur in the alley between his house and a bar. Harris assumed that these men left their drugs in the alley after a shooting had occurred outside the bar earlier that night. The first man with the gun, who was called "Muff," stuck the gun inside Harris's mouth. The second man also stuck a gun in Harris's mouth. After it was determined that Harris did not have their drugs, the men demanded $600 and took Harris's walkie-talkies and some tools.
 {¶ 4} Harris identified "Muff" as Larry McQueen ("McQueen"). However, he was unable to identify the other two men at that time.
 {¶ 5} Cleveland Police Officer Christopher Lozinak ("Lozinak") testified that he responded to Harris's call to police. Lozinak testified that Harris appeared shaken up and scared, but there was no physical evidence of a break-in. Lozinak testified that his "gut feeling" at the time was that Harris was lying. However, when he went outside and saw the vehicle that was shot at the night before in front of the bar, he found the story more credible.
 {¶ 6} Harris testified that on October 6, a white Cadillac pulled into his driveway. At first, Harris was not concerned until he recognized one of the passengers as the second man who had stuck a gun in his mouth on August 17. Harris immediately contacted Detective Stephen Loomis ("Loomis"). Loomis testified that Harris seemed upset and afraid when he called. Another officer stopped the white Cadillac, and the traffic stop led to Pollard.
 {¶ 7} Loomis and Officer John Kraynik testified that Harris identified Pollard from a photo array as the second man in his house. Loomis testified that he prepared the photo array on September 9; however, Harris did not make his identification of Pollard until October 6 or 7. Harris also identified Pollard at trial.
 {¶ 8} Felisa Jones ("Jones") testified that she was with Harris on the night of the break-in, "doing drugs." She testified that earlier that night she and Harris sold a CD player/radio to Pollard to buy drugs. She further stated that they exchanged walkietalkies for drugs from McQueen. Jones testified that Harris went outside after they heard shots fired and he came back in the house with a bottle of PCP that he said he found outside. They tried to call McQueen in order to sell it, but were unsuccessful. Jones and Harris went to meet "Doomie" a.k.a. David Moss ("Moss") to exchange the PCP for crack cocaine.
 {¶ 9} Jones testified that, at the time of the break-in, Harris let the men inside and McQueen and another man put guns inside Harris's mouth, demanding the return of their PCP. Jones testified that Pollard was not one of the men who entered Harris's house.
 {¶ 10} Moss corroborated Jones' testimony, admitting that he exchanged PCP with Harris and Jones for crack. Moss further testified that McQueen inquired about the PCP. When it was determined that Moss had McQueen's PCP, Moss offered to return it to McQueen. Moss also testified that he was a passenger in the white Cadillac on October 6, but not Pollard.
 {¶ 11} Pollard testified consistent with Jones and Moss. He stated that he met Harris on August 17 and traded a radio for drugs. He also stated that he saw McQueen that night talking to Moss. Pollard denied any involvement in the break-in.
 {¶ 12} The jury found Pollard guilty of aggravated burglary and acquitted him on aggravated robbery and the firearm specifications. The trial court sentenced him to three years in prison.
 {¶ 13} Pollard appeals, raising five assignments of error which will be addressed together where appropriate.
 Sufficiency of the Evidence {¶ 14} In his first assignment of error, Pollard argues that there was insufficient evidence to convict him of aggravated burglary.
 {¶ 15} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v. Thompkins, 78 Ohio St.3d 380, 390,1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 16} Pollard was convicted of aggravated burglary pursuant to R.C.2911.11, which provides in relevant part:
"(A) No person, by force, stealth, or deception, shall trespass in anoccupied structure or in a separately secured or separately occupiedportion of an occupied structure, when another person other than anaccomplice of the offender is present, with purpose to commit in thestructure or in the separately secured or separately occupied portion ofthe structure any criminal offense, if any of the following apply:
• * *
(2) The offender has a deadly weapon or dangerous ordnance on or aboutthe offender's person or under the offender's control."
 {¶ 17} In the instant case, the evidence shows that, in the early morning of August 17, Harris was at his residence, when someone stuck a gun inside the door, demanding entry. When Harris opened the door, three men confronted him, with the first man pointing a gun at Harris. The men were looking for their drugs, which were left in the alley outside Harris's residence. Harris testified that the first man with the gun, who was later identified as "Muff," a.k.a. Larry McQueen, stuck the gun inside Harris's mouth and demanded his drugs. Harris testified that the second man, who Harris later identified as Pollard, also stuck a gun inside his mouth. After it was determined that Harris did not have their drugs, the men demanded $600 and took Harris's walkie-talkies and some tools.
 {¶ 18} Viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence exists to support Pollard's conviction for aggravated burglary.
 {¶ 19} Accordingly, the first assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 20} In his second assignment of error, Pollard argues that his conviction is against the manifest weight of the evidence.
 {¶ 21} In evaluating a challenge to the verdict based on manifest weight of the evidence, a court sits as the thirteenth juror and intrudes its judgment into proceedings which it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury which has "lost its way." Thompkins, supra. As the Ohio Supreme Court declared:
"Weight of the evidence concerns `the inclination of the greater amountof credible evidence offered in a trial, to support one side of the issuerather than the other. It indicates clearly to the jury that the partyhaving the burden of proof will be entitled to their verdict, if, onweighing the evidence in their minds, they shall find the greater amountof credible evidence sustains the issue which is to be established beforethem. Weight is not a question of mathematics, but depends on its effectin inducing belief.' * * *
 The court, reviewing the entire record, weighs the evidence and allreasonable inferences, considers the credibility of witnesses anddetermines whether in resolving conflicts in the evidence, the juryclearly lost its way and created such a manifest miscarriage of justicethat the conviction must be reversed and a new trial ordered. Thediscretionary power to grant a new trial should be exercised only in theexceptional case in which the evidence weighs heavily against theconviction." Id. at 387.
 {¶ 22} A reviewing court will not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Additionally, circumstantial evidence and direct evidence inherently possess the same probative value and, therefore, should be subjected to the same standard. Jenks, supra.
 {¶ 23} Upon review of the evidence presented at trial, this court cannot find that the jury lost its way when it found Pollard guilty of aggravated burglary. In the instant case, the evidence shows that Harris identified Pollard in a photo array and at trial as the second man who stuck a gun in his mouth. Although he testified at the preliminary hearing that he was unsure whether Pollard had a gun, he clearly stated at trial that Pollard had a gun that night.
 {¶ 24} Pollard argues that there are several inconsistencies in the testimony and evidence. However, the jury is in the best position to weigh the credibility of the witnesses and resolve any inconsistencies.
 {¶ 25} First, Pollard argues that the testimony of Harris and Detective Loomis are contradictory concerning the photo array and identification made by Harris. Pollard claims that Harris could not identify him as one of the men who entered his home until after he saw Pollard in the white Cadillac on the night of October 6. Yet, Detective Loomis testified that he created the photo array which included Pollard's picture on September 9.
 {¶ 26} The evidence shows that the photo array was created on September 9, yet Harris did not identify Pollard from the array until October 6 or 7. However, the record indicates that Pollard was a suspect prior to the night of October 6. The record shows that an arrest warrant was issued for Pollard on September 10 and Pollard was arrested on October 6, which is consistent with Loomis' testimony.
 {¶ 27} Thus, while Harris testified that he did not identify Pollard as one of the men who broke into his home until he saw him in the white Cadillac on October 6, the police already suspected Pollard. Additionally, Harris could have been confused as to whether he had already identified Pollard. Moreover, Pollard was in police custody by the time Harris identified him in the photo array.
 {¶ 28} Pollard also argues that he could not have been in the white Cadillac because he was already in police custody. The evidence does not support this argument. The Cadillac incident occurred on the same day Pollard was arrested — October 6. No evidence was presented establishing the exact time Pollard was arrested.
 {¶ 29} Pollard also claims that Jones's and Moss's testimony casts doubt on Harris's version of events. However, the credibility of witnesses is a matter for the jury to decide. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212. {¶ 30} Therefore, based on Harris's in-court identification of Pollard as the second man who stuck a gun in his mouth on August 17, Pollard's conviction is not against the manifest weight of the evidence.
 {¶ 31} Accordingly, the second assignment of error is overruled.
 Impeachment of Witnesses/Prosecutorial Misconduct {¶ 32} In his third and fourth assignments of error, Pollard argues that there was prosecutorial misconduct and defects at trial affecting his substantial rights when various witnesses were impeached on prior arrests. He claims that the prosecutor acted improperly and violated Evid.R. 609 when eliciting testimony from witnesses with respect to their arrest records.
 {¶ 33} Pollard failed to object to this testimony during trial, thus he has waived all but plain error. State v. Smith, 80 Ohio St.3d 89, 107,1997-Ohio-355, 684 N.E.2d 668. Moreover, he did not object to the alleged prosecutorial misconduct, thus waiving all but plain error. State v.Slagle (1992), 65 Ohio St.3d 597, 604, 605 N.E.2d 916.
 {¶ 34} Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The standard for noticing plain error is set forth in State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68,759 N.E.2d 1240:
"By its very terms, the rule places three limitations on a reviewingcourt's decision to correct an error despite the absence of a timelyobjection at trial. First, there must be an error, i.e., a deviation froma legal rule. * * * Second, the error must be plain. To be `plain' withinthe meaning of Crim.R. 52(B), an error must be an `obvious' defect in thetrial proceedings. * * * Third, the error must have affected `substantialrights.' We have interpreted this aspect of the rule to mean that thetrial court's error must have affected the outcome of the trial."(Citations omitted.)
 {¶ 35} An error that satisfies these three requirements may be corrected by the appellate court. However, notice of plain error should be done "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long
(1978), 53 Ohio St.2d 91, 97, 372 N.E.2d 804.
 {¶ 36} Evid.R. 609 governs the procedure for impeachment with evidence of convictions. Evid.R. 609(A)(2) provides:
"Evidence that the accused has been convicted of a crime is admissibleif the crime was punishable by death or imprisonment in excess of oneyear pursuant to the law under which the accused was convicted and if thecourt determines that the probative value of the evidence outweighs thedanger of unfair prejudice, of confusion of the issues, or of misleadingthe jury."
 {¶ 37} Only convictions are admissible — not arrests, indictments, or charges. State v. McKnight (June 3, 1993), Cuyahoga App. No. 62808, citing State v. Rodriquez (1986), 31 Ohio App.3d 174, 176,509 N.E.2d 952. "Inquiry with respect to arrests, accusations, or indictments which did not result in a conviction is improper and constitutes prejudicial error." State v. Tharp (1976),49 Ohio App.2d 291, 361 N.E.2d 469.
 {¶ 38} Generally, conduct of a prosecuting attorney at trial is not grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19, 514 N.E.2d 394. InSmith v. Phillips (1982), 455 U.S. 209, 102 S. Ct. 940, 71 L. Ed. 2d 78, the United States Supreme Court stated that the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. The effect of the prosecutor's alleged misconduct must be considered in light of the whole trial. State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768.
 {¶ 39} In the instant case, Pollard claims that the State acted improperly and materially prejudiced his right to a fair trial when the prosecutor questioned him, Jones, and Moss regarding their arrests.
 {¶ 40} On direct examination, Jones volunteered the fact that she had a prior "drug case." On cross-examination, the State followed up on this "drug case" and Jones testified that she had been arrested for drug abuse, aggravated assault, and robbery. The State further asked Jones about the 1999 charges to which she pled guilty in 2001. We find nothing improper about these questions. The State was merely following up on testimony given during direct examination. Furthermore, the 1999 charges resulted in convictions for having a weapon while under disability and drug trafficking.
 {¶ 41} We also find that the State acted properly in questioning Moss. The State focused its questions on Moss's criminal record, which was first raised by Pollard on direct examination. Pollard questioned Moss regarding his criminal record, current probation status, and his arrest relative to the instant case. On cross-examination, the State asked for clarification regarding his arrest in the instant case and his probation status. The State also asked whether Moss had ever been in jail. By stating that he was in jail for drug possession, the inference was created that he was convicted of a crime. Therefore, no error existed because the State's questions related to issues first raised by Pollard.
 {¶ 42} Regarding Pollard's testimony, we also find no error or misconduct. Again, the State was merely following up on Pollard's testimony on direct examination regarding his criminal and arrest record. Pollard's counsel opened the door when he asked him questions regarding all his arrests. It is disingenuous for Pollard to now claim error in the State's questioning him about his "arrests" when he first testified about those arrests. Where a defendant "opens the door" to a subject that might have been otherwise improper, the limiting rules concerning arrests, charges, or indictments do not apply. McKnight,
supra.
 {¶ 43} Because we find that the trial court properly allowed the testimony, we find neither plain error nor prosecutorial misconduct. See, State v. Joseph, 73 Ohio St.3d 450, 1995 Ohio 288, 653 N.E.2d 285
(no plain error unless, but for the error, the outcome at trial would have been different); State v. Smith (1984), 14 Ohio St.3d 13, 14,470 N.E.2d 883 (no prosecutorial misconduct unless the rights of the accused were materially prejudiced).
 {¶ 44} Accordingly, the third and fourth assignments of error are overruled.
 Ineffective Assistance of Counsel {¶ 45} In his final assignment of error, Pollard argues that he was denied the effective assistance of counsel.
 {¶ 46} In a claim of ineffective assistance of counsel, the burden is on the defendant to establish that counsel's performance fell below an objective standard of reasonable representation and prejudiced the defense. Strickland v. Washington (1984), 466 U.S. 668, 104 S. Ct. 2052. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal,87 Ohio St.3d 378, 388-389, 2000-Ohio-448, 721 N.E.2d 52, citingStrickland, supra at 687-688.
 {¶ 47} In evaluating whether a petitioner has been denied effective assistance of counsel, the Ohio Supreme Court held that the test is "whether the accused, under all the circumstances, * * * had a fair trial and substantial justice was done." State v. Hester (1976),45 Ohio St.2d 71, 341 N.E.2d 304, paragraph four of the syllabus. When making that evaluation, a court must determine "whether there has been a substantial violation of any of defense counsel's essential duties to his client" and "whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, vacated on other grounds (1978), 438 U.S. 910, 57 L. Ed. 2d 1154,98 S. Ct. 3135; State v. Calhoun, 86 Ohio St.3d 279, 289, 1999-Ohio-102,714 N.E.2d 905.
 {¶ 48} As to the second element of the test, the defendant must establish "that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."State v. Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus; Strickland, supra, at 686. The failure to prove any one prong of the Strickland two-part test makes it unnecessary for a court to consider the other prong. Madrigal, supra, at 389, citingStrickland, supra, at 697.
 {¶ 49} Pollard argues his trial counsel was ineffective for failing to object to the State's impeachment of witnesses, failing to request that the court consolidate his case with McQueen's case, failing to provide a notice of alibi, and failing to advise him regarding sentencing.
 {¶ 50} First, we have previously found that the State's impeachment questions were not improper, thus, counsel was not ineffective for failing to object. Also, Pollard was not prejudiced by counsel's failure to file a notice of alibi because the trial court allowed him to present alibi testimony at trial over the State's objection.
 {¶ 51} Pollard has failed to satisfy either prong of Strickland
regarding consolidation of cases and sentencing. Pollard has not demonstrated how consolidation of his case with McQueen's case would have resulted in a different outcome. Pollard claims that McQueen admitted his guilt to him in a letter. However, merely because McQueen admitted committing the crime does not prove Pollard's innocence. Harris testified that three men entered his home that night, including McQueen. Thus, even if McQueen admitted guilt, Pollard could still be found guilty. Moreover, we can only speculate whether McQueen would have testified and whether he would have implicated Pollard.
 {¶ 52} Pollard has misstated the facts in claiming that the trial court noted that his counsel erred by not seeking consolidation. The court merely stated that the cases "should have been tried together." This statement does not necessarily mean that Pollard's counsel was ineffective for not consolidating the cases.
 {¶ 53} Pollard also claims that his trial counsel was ineffective in failing to advise him of possible penalties prior to sentencing. Again, Pollard has failed to demonstrate how the outcome of his trial would have been different had counsel explained the potential penalties prior to sentencing. In fact, Pollard's confusion and alleged misinformation proved beneficial as the trial court stated that it could have sentenced him to ten years instead of the minimum three years it imposed.
 {¶ 54} Therefore, we find that Pollard has failed to establish the ineffective assistance of his counsel.
 {¶ 55} Accordingly, the final assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J. and Corrigan, J. Concur.