JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant, Darla Cooper ("Cooper"), appeals her conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2003, Cooper was charged with three counts of forgery, three counts of uttering, and one count of identity theft. The matter proceeded to a jury trial. The trial court dismissed the identity theft count at the close of the State's case. The jury found Cooper guilty of all the other counts. Cooper was sentenced to one year of community control sanctions and fifty hours of community service.
 {¶ 3} Cooper appealed her conviction, which we dismissed for lack of a final appealable order because the trial court failed to impose sentence for every offense for which she was found guilty. State v. Cooper, Cuyahoga App. No. 84716,2005-Ohio-754, 2005-Ohio-1020.
 {¶ 4} The court resentenced Cooper to one year of community control sanctions.
 {¶ 5} The following facts were produced at trial. From 1995 to 2003, Cooper went to the Bureau of Motor Vehicles ("BMV") eleven times to obtain either a duplicate driver's license or a renewal. On February 25, 2003, Cooper filed a police report, claiming that she lost her driver's license in August 2002. The next month, she went to the BMV to obtain a duplicate license, but was unable to obtain one because her license was under suspension. When the BMV employee told her that she could obtain only a state identification card, Cooper left her social security card, birth certificate, and the police report at the BMV. She never returned to claim the documents.
 {¶ 6} In March 2003, Ernest and Denise McAreavey contacted the Brooklyn Police Department after they discovered that three personal checks, bearing their checking account number, had been forged and negotiated. The three checks still had Denise McAreavey's name on them, but the name "Darla Cooper" was in place of "Ernest McAreavey." The other information on the checks matched, but the checks did not come from the McAreavey's checkbook. The forged checks were printed on different paper and in a different style than the McAreavery's original checks. Cooper's social security and driver's license numbers were also hand-written on the checks.
 {¶ 7} Detective Teneglia of the Brooklyn Police Department investigated and found that the three checks had been negotiated on February 27, 2003, at various stores in the city. After she was indicted, Cooper agreed to submit to a handwriting exemplar. The exemplar was then sent to the Ohio Bureau of Criminal Investigation ("BCI") for comparison to the signatures on the checks. BCI concluded that the comparisons neither identified nor eliminated Cooper as the person who signed the checks.
 {¶ 8} At trial, the detective testified that the signatures on the forged checks and the signature on Cooper's driver's license appeared to be similar. Also admitted into evidence was a photo from a store security camera that showed a person negotiating one of the forged checks. The detective testified that the photo resembled Cooper, but he was unable to positively identify Cooper as the woman in the photo.
 {¶ 9} Cooper appeals her conviction, raising two assignments of error. In her first assignment of error, she argues that the trial court committed reversible error when it allowed Detective Teneglia to opine about the handwriting sample admitted into evidence.[1]
 {¶ 10} The trial court has broad discretion in the admission of evidence and unless it has clearly abused its discretion and the defendant has been materially prejudiced thereby, this court should be slow to interfere. State v. Hymore (1967),9 Ohio St.2d 122, 128, 224 N.E.2d 126.
 {¶ 11} The Rules of Evidence allow for non-expert testimony on the issue of handwriting identification. Evid.R. 901(B)(2) permits non-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation. The testimony of a police officer as to the genuineness of a handwriting sample is generally not permitted by the Rule. State v. Brennan, Licking App. No. 02-CA-00042, 2002-Ohio-5952.
 {¶ 12} Cooper cites Brennan and argues that the trial court erred in this case because the court allowed the detective to give a lay opinion as to the authenticity of the handwriting on the exhibits. We find Brennan distinguishable, however, because in Brennan the police officer testified that handwriting samples "matched." In this case, the detective testified that the handwriting samples were similar, but never stated that they matched. In fact, when questioned whether he had "formed the opinion that the signatures looked to be one and the same," the detective answered that he had only formed the opinion that they were similar.
 {¶ 13} The testimony of the detective does not fall within the purview of Evid.R. 901. Although the detective could recognize Cooper's handwriting, his familiarity stemmed from the handwriting exemplar, which was acquired for purposes of litigation. The exemplar was completed during the pretrial process, after Cooper had been indicted.
 {¶ 14} However, we find that the detective's testimony is admissible under Evid.R. 701, which provides:
{¶ 15} "If the witness is not testifying as an expert, histestimony in the form of opinions or inferences is limited tothose opinions or inferences which are (1) rationally based onthe perception of the witness and (2) helpful to a clearunderstanding of his testimony or the determination of a fact inissue."
 {¶ 16} Under Evid.R. 701, courts have permitted lay witnesses to express their opinions in areas in which it would ordinarily be expected that an expert must be qualified under Evid.R. 702.State v. McKee, 91 Ohio St.3d 292, 2001-Ohio-41,744 N.E.2d 737. In McKee, the issue was whether a drug user could testify about the identity of drugs. The court stated that:
{¶ 17} "Although these cases are of a technical nature in thatthey allow lay opinion testimony on a subject outside the realmof common knowledge, they still fall within the ambit of therule's requirement that a lay witness's opinion be rationallybased on firsthand observations and helpful in determining a factin issue. These cases are not based on specialized knowledgewithin the scope of Evid.R. 702, but rather are based upon alayperson's personal knowledge and experience."
 {¶ 18} We find that the detective's testimony in this case also fits into this classification. In this case, the detective was testifying as a lay witness. The detective's opinion was based on his experience as a police officer, his previous investigations of forgeries, and his perception of the handwriting samples at issue. Moreover, his testimony was helpful to determine a fact in issue. Therefore, his testimony was properly admitted under Evid.R. 701.
 {¶ 19} However, even if it was error to allow the detective's lay opinion, we find that it was not so prejudicial as to constitute reversible error. Under Crim.R. 52(A), any error will be deemed harmless if it did not affect the defendant's substantial rights. The defendant has a constitutional guarantee to a trial free from prejudicial error, not necessarily one free of all error. Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. Statev. Lytle (1976), 48 Ohio St.2d 391, 358 N.E.2d 623, paragraph three of the syllabus, vacated on other grounds, Lytle v. Ohio
(1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.
 {¶ 20} The majority of jurisdictions permit the jury to compare a disputed writing to a standard, without the aid of an expert witness. State v. Butler (Nov. 21, 1991), Cuyahoga App. No. 59424.
 {¶ 21} Evid.R. 901(B)(3) Staff Notes provide in pertinent part:
{¶ 22} "* * * Rule 901(B)(3) provides that an expert or thejury, as trier of fact, may compare the handwriting in questionwith a specimen of handwriting which has been authenticated. Ohiocases have followed such procedure. * * * *."
 {¶ 23} The detective testified that he was not an expert in handwriting analysis and was only giving his opinion as a lay witness. At no time did the detective testify that the handwriting on the exemplar or driver's license matched the signatures on the forged checks. The jury is in the best position to weigh the credibility of the witnesses and to resolve any inconsistencies. State v. Pollard, Cuyahoga App. No. 84555,2005-Ohio-1505. Moreover, the jury had the opportunity to compare the signatures and draw its own conclusion. Therefore, we find no reversible error and overrule the first assignment of error.
 {¶ 24} In her second assignment of error, Cooper argues that her conviction was not supported by sufficient evidence.
 {¶ 25} A challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. This test is a question of law; it does not allow the court to weigh the evidence. Thompkins, supra at 386; State v. Thomas (1982),70 Ohio St.2d 79, 79-80, 434 N.E.2d 1356. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." State v. Ragland, Franklin App. No. 04AP-829, 2005-Ohio-4639, citing, Jackson v. Virginia (1979),443 U.S. 307, 319, 61 L.Ed.2d 560, 99 S.Ct. 2781. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the determination of the finder of fact with regard to the credibility of the witnesses. Ragland, supra, citing, State v. Yarbrough, 95 Ohio St.3d 227, 2002-Ohio-2126,767 N.E.2d 216.
 {¶ 26} Cooper was convicted of forgery and uttering pursuant to R.C. 2913.31, which provides in part:
 {¶ 27} "(A) No person, with purpose to defraud, or knowingthat the person is facilitating a fraud, shall do any of thefollowing:
 {¶ 28} "* * *
 {¶ 29} "(2) Forge any writing so that it purports to begenuine when it actually is spurious * * *;
 {¶ 30} "(3) Utter, or possess with purpose to utter, anywriting that the person knows to have been forged."
 {¶ 31} Cooper argues that there was insufficient evidence to establish that she was the person who forged and uttered the checks because no one could identify her as the person who forged the checks.
 {¶ 32} Proof of guilt may be made by circumstantial evidence, real evidence, and direct or testimonial evidence, or any combination of the three, and all three have equal probative value. State v. Nicely (1988), 39 Ohio St.3d 147,529 N.E.2d 1236; Jenks, supra. We note that "circumstantial evidence may be more certain, satisfying and persuasive than direct evidence."State v. Richey, 64 Ohio St.3d 353, 363, 1992-Ohio-44,595 N.E.2d 915.
 {¶ 33} Although there were no eyewitnesses, there was significant circumstantial evidence linking Cooper to the crimes. Cooper waited almost six months to file a police report after her license was allegedly stolen. She then went to the BMV to acquire a new license two days before the forged checks were presented. After being told by a BMV employee that she could not obtain a driver's license, she left the BMV to go to the bank, leaving behind her social security card and birth certificate. She never returned for the documents, nor did she ever contact the BMV to retrieve them. There was no evidence that anyone else posed as Cooper at the BMV. Also, there was no evidence that Cooper's social security card and birth certificate were ever lost or stolen. Moreover, the detective testified that it is common for criminals to report their identification stolen prior to committing their crimes as a means to shift the blame to someone else.
 {¶ 34} We are cognizant of the fact that BCI was unable to verify the handwriting and that the detective was unable to determine if the security camera photo was that of Cooper. Although BCI was unable to verify that Cooper's handwriting exemplar matched the forged checks, the detective's uncontroverted testimony was that the lab is unable to exclude a defendant's handwriting in 75 percent of the samples submitted. Additionally, the woman in the photo who presented the forged check at the store was of the same complexion as Cooper. Moreover, all three forged checks contained the same signature, along with Cooper's social security number and driver's license information. The detective further testified that in the majority of the forgery crimes he had investigated, the forger used his or her own name in place of the name they deleted from the original check.
 {¶ 35} We find that the direct and circumstantial evidence in this case, and the reasonable inferences that can be drawn therefrom, were more than sufficient to establish Cooper's identity as the perpetrator. Viewing the evidence in the light most favorable to the prosecution, we find that there was sufficient evidence upon which the jury could reasonably conclude that all the elements of the offenses were proven beyond a reasonable doubt. See State v. Eley (1978), 56 Ohio St.2d 169,383 N.E.2d 132.
 {¶ 36} Therefore, the second assignment of error is overruled. Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Dyke, A.J. and Sweeney, J. Concur.
[1] Cooper does not challenge the admissibility or authenticity of the documents under Evid.R. 803 or 901.