JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant-appellant, David Lewis, appeals his conviction for felonious assault. Finding no merit to the appeal, we affirm.
 {¶ 2} The grand jury indicted Lewis on five counts: one count of attempted rape, a violation of R.C. 2907.02(A)(2); two counts of kidnapping, a violation of R.C. 2905.01(A0(4); one count of felonious assault, a violation of R.C. 2903.11(A)(1); and one count of possession of criminal tools, a violation of R.C. 2923.24(A). Lewis pled not guilty, and the matter proceeded to a jury trial.
 {¶ 3} We glean the following facts from the evidence presented at Lewis's jury trial.
 {¶ 4} Jacqueline Davis testified that sometime in the early hours of July 21, 2007, after a night of drinking and using drugs, she was walking home to her parents' house when a van pulled beside her. The driver, who Davis later identified as Lewis, indicated that he lived only a couple of blocks from her parents' house and offered her a ride. Davis accepted his offer.
 {¶ 5} Lewis stopped at his house first and convinced Davis to wait in the van while he went inside. After waiting a few minutes, Davis exited the van. Lewis returned outside and grabbed Davis when she attempted to leave. Davis tried to scream, but Lewis covered her mouth and pulled her inside the house. Once inside, Lewis attacked Davis, punching her in the face, choking her, and banging her head "on the walls, on the floor, face up, face down." According to Davis, at that point, *Page 4 
"[she] was fighting for her life."
 {¶ 6} Davis begged Lewis not to kill her and pleaded with him to take her to the hospital. He appeared to comply, carried her to his van, and threw her inside. But after he pulled out of the driveway, he drove in the opposite direction of Marymount Hospital. When Lewis approached a curve and slowed down, Davis jumped out of the van and crawled to the front porch of the nearest house. The residents called 911, and Davis was transported to Marymount Hospital.
 {¶ 7} As a result of her injuries, Davis received two staples in the back of her head, three stitches in her lip, and remained in the hospital for several days.
 {¶ 8} At trial, Davis positively identified Lewis as the attacker and further identified Lewis's house.
 {¶ 9} Garfield Heights police officer Heather DiPenti reported to Marymount Hospital on July 21 to interview Davis. Officer DiPenti testified that, apart from the obvious severe beating Davis had suffered, hospital personnel suspected sexual assault as well. Davis told Officer DiPenti about the events leading to her attack and indicated that it occurred on East 135th Street, near Broadway. Davis further relayed certain specific details regarding Lewis's house: she recalled (1) an "abandoned vehicle" in the back of the house; (2) dogs barking in the basement; (3) extreme clutter and a horrific odor inside the house; and (4) that the house was yellow. Officer DiPenti investigated the street and narrowed the houses down to one based on the color, a dark-colored van parked in the driveway, and a junk vehicle parked in the back. Officer DiPenti, working with Garfield Heights detective Jon *Page 5 
Cermak, ran the license plate of the van through LEADS, determined that the van was licensed to Lewis's mother, and ultimately obtained a photograph of Lewis from the Bureau of Motor Vehicles.
 {¶ 10} Detective Cermak testified that, after obtaining Lewis's photo, he arranged a photo array and presented it to Davis at the hospital, where she immediately identified Lewis as the perpetrator. The following day, Detective Cermak and another detective went to Lewis's home to investigate further. Lewis answered the door but was very uncooperative. While speaking with Lewis, Detective Cermak heard dogs barking inside the house, noticed that the house was unkempt, and smelled a foul odor. Based on these facts, Detective Cermak obtained a search warrant for the house and the van and executed it the next day.
 {¶ 11} During the search, Detective Cermak discovered a passenger seat of a Dodge van located in the kitchen of Lewis's home. The van outside was missing the front passenger seat. Detective Cermak testified that the seat had "red markings that were consistent with human blood." The markings were swabbed and sent to the Bureau of Criminal Identification and Investigation for testing. At trial, the state admitted the results of the testing into evidence, which indicated that the "DNA profile from the swab from `passenger seat' of David Lewis'[s] vehicle * * * is consistent with Jackie Davis."
 {¶ 12} The jury found Lewis guilty of felonious assault but not guilty on the remaining charges. The trial court sentenced Lewis to six years in prison and notified him that he would be subject to five years postrelease control. Lewis *Page 6 
appeals, raising a single assignment of error.
 {¶ 13} "The jury erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."
 {¶ 14} In reviewing a claim that a conviction is against the manifest weight of the evidence, the Ohio Supreme Court in State v.Thompkins (1997), 78 Ohio St.3d 380, 387, explained the appropriate standard of review as follows:
 {¶ 15} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns `the inclination of thegreater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. * * * Weight is not a question of mathematics, but depends on its effect in inducing belief' (Emphasis added.)
 {¶ 16} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * * `The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new *Page 7 
trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" (Internal citations omitted.)
 {¶ 17} Here, the jury convicted Lewis of felonious assault under R.C. 2903.11(A)(1), which provides in pertinent part: "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."
 {¶ 18} The gravamen of Lewis's argument is that the jury lost its way in believing Davis when she was completely impaired at the time of the incident, thereby rendering her recollection of the events totally unreliable, and she offered inconsistent testimony regarding the alleged rape. Although he concedes that Davis clearly suffered severe injuries, he argues that, apart from the unreliable testimony of Davis, the record contains no evidence tying him to the offense. He contends that Davis's injuries could have been the result of her falling out of the van. We find his argument unpersuasive.
 {¶ 19} First, Davis described specific details surrounding the attack, which the police independently verified. For example, Davis described Lewis's van, specific details about his residence, and positively identified him from a photo array. Secondly, the DNA evidence obtained from the scene corroborated Davis's testimony. The blood found on the passenger seat of Lewis's van was consistent with Davis's blood. If Davis's injuries arose only after falling out of the van, the police would not have found her blood inside the van. Finally, as for any alleged inconsistencies in Davis's testimony regarding an alleged rape, the jury found Lewis not guilty on that charge. Indeed, even when a witness makes some inconsistent *Page 8 
statements, "the jury is in the best position to weigh the credibility of the witness and resolve any inconsistencies." State v. Cooper, 8th Dist. No. 86437, 2006-Ohio-817, ¶ 23.
 {¶ 20} Thus, after reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and conflicts in the evidence, we do not find that Lewis's conviction was such that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." See Thompkins, supra. The sole assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
COLLEEN CONWAY COONEY, A.J., and MARY EILEEN KILBANE, J., CONCUR *Page 1