[Cite as *State v. Murphy*, 2011-Ohio-3686.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No.   95705

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAYSON S. MURPHY

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-530815

**BEFORE:**    Boyle, J., Blackmon, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:**    July 28, 2011

**ATTORNEY FOR APPELLANT**

Ruth Fischbein-Cohen
3552 Severn Road
Suite 613
Cleveland Heights, Ohio    44118

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
BY:   Anna M. Faraglia
Assistant County Prosecutor
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY J. BOYLE, J.:

{¶ 1} Defendant-appellant, Jayson Murphy, appeals his four sexual battery convictions.   He raises three assignments of error for our review:

{¶ 2} "[1.] Jason [sic] Murphy was deprived of effective assistance of counsel, thereby being deprived of a fair trial.

{¶ 3} "[2.] The verdict was against the manifest weight of the evidence, thereby creating a manifest miscarriage of justice.

**{¶ 4}** "[3.] It was error to convict Jason [sic] Murphy for more than one count of sexual battery where the evidence adduced one uninterrupted episode of sexual acts."

**{¶ 5}** Finding no merit to the appeal, we affirm.

## Procedural History

**{¶ 6}** In November 2009, the grand jury indicted Murphy on ten counts: four counts of rape, in violation of R.C. 2907.02(A)(1)(c),with sexually violent predator specifications; four counts of sexual battery, in violation of R.C. 2907.03(A)(2); kidnapping, in violation of R.C. 2905.01(A)(4), with a sexual motivation specification; and intimidation of a crime victim or witness, in violation of R.C. 2921.04(B).

**{¶ 7}** The matter was tried to a jury who found Murphy guilty of the four counts of sexual battery, but not guilty of the remaining counts.

**{¶ 8}** The trial court sentenced Murphy to five years on each count of sexual battery and ordered that they be served consecutive to one another, for an aggregate term of 20 years in prison. The trial court also notified Murphy that he was subject to five years of mandatory postrelease control upon his release from prison and was labeled a Tier III sex offender.

## Jury Trial

**{¶ 9}** The events that led to the indictment took place on October 4, 2009. The victim testified that she and Murphy had been in a relationship since June or July of 2009. Until October of that year, they had a consensual sexual relationship. During the course of

their sexual relationship, they "role-play[ed]," had "sex toys," took pictures of themselves having sexual intercourse, and took "sexy" pictures of each other. The victim testified that at some point their relationship changed and Murphy became more controlling.

{¶ 10} On the night of October 4, the victim and Murphy had arrived at the victim's home around 9:30 p.m. The victim testified that she told Murphy that she was going to take Ambien, which is a sleeping pill, because she was exhausted and had school in the morning. But she testified that the real reason she took the Ambien was that she was tired of Murphy and just wanted to sleep.

{¶ 11} The victim went upstairs to her bedroom, put her "night clothes on," and took one Ambien pill. It was approximately 9:45 p.m. when she took it. About five minutes after she took it, she said that she felt "real dizzy," and her "knees buckle[d]." She made it to her bed, and that is all she remembered until 8:00 the next morning, when her alarm went off.

{¶ 12} The victim explained that before she left her house that next morning, Murphy approached her and said, "I want to show you somethin'." He showed her his cell phone, which had sexual photos of her on it that he had taken the night before when she was sleeping. She asked Murphy why he did it, and he replied, "if you stay, you got nothin' to worry about, but if you leave I'm puttin' these pictures on the Internet, I show everybody." The

victim testified that she later found more sexual photos of herself on her cell phone that Murphy had taken of her while she was sleeping.

{¶ 13} The victim identified 21 photos that Murphy had taken of her with his cell phone, and seven photos he had taken with her cell phone. She identified several photos that showed her sleeping, and photos where he had pulled down her "panties" and exposed her breasts and posed her in different positions. There were photos of Murphy's fingers in the victim's anus and vagina at the same time, and a photo where his three fingers were in her vagina. There were also photos of Murphy using the victim's sex toys, a "purple dildo" and a "glass dildo," on her while she was sleeping, including pictures of both "dildos" in her anus and in her mouth.

{¶ 14} The victim also identified several sexual photos that she and Murphy had taken of themselves. In these particular photos, the victim stressed that she was awake and consented to the photos, unlike the ones where she was asleep.

{¶ 15} The victim did not report the incidents until October 23, 2009, after Murphy had broken down her door and threatened her.

{¶ 16} Murphy testified on his own behalf. He admitted to taking the photos of the victim, but claimed she consented to it, just as she had in the past.

Ineffective Assistance of Counsel

{¶ 17} In his first assignment of error, Murphy claims that his trial counsel was ineffective for failing to object when the prosecutor was cross-examining him. Specifically, Murphy contends that his trial counsel should have objected when the prosecutor questioned him (1) about his prior drug trafficking conviction; (2) about his prior attempted domestic violence conviction; and (3) about his drinking habits.

{¶ 18} In *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court set forth the two-pronged test for ineffective assistance of counsel. It requires that the defendant show (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. The first prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. The second prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." Id.

{¶ 19} When Murphy testified on direct-examination, he testified to his prior drug trafficking and attempted domestic violence convictions. He also testified that he did not drink very much, while he painted a picture of the victim as being constantly intoxicated or high on drugs.

{¶ 20} In light of Murphy's direct-examination, we cannot say that the prosecutor's questions on cross-examination were improper. The prosecutor questioned Murphy about his prior convictions only after Murphy testified to them first. See *State v. Pollard*, 8th Dist. No. 84555, 2005-Ohio-1505 (where a defendant "opens the door" to his prior criminal record, he cannot then complain about the prosecutor questioning him on it). Further, evidence of criminal convictions may be used to impeach the credibility of a defendant. Evid.R. 609.

{¶ 21} The prosecutor also questioned Murphy about his drinking habits because Murphy made it an issue when he testified; Murphy put his credibility and that of the victim's at issue. Murphy testified that he only drinks "a little, but not too much," but stated that the victim was high or drunk most of the time ("she got wasted, as usual"). In this instance, where Murphy put his credibility at issue, the prosecutor's questions about Murphy's drinking habits were certainly permissible.

{¶ 22} Accordingly, since the prosecutor's questions were not improper, Murphy's trial counsel was not ineffective for failing to object to them. Murphy's first assignment of error is overruled.

## Manifest Weight of the Evidence

{¶ 23} In his second assignment of error, Murphy claims that his convictions were against the manifest weight of the evidence. We disagree.

{¶ 24} In reviewing a claim challenging the manifest weight of the evidence, "[t]he question to be answered is whether there is *substantial* evidence upon which a jury could reasonably conclude that all the elements have been proved beyond a reasonable doubt.  In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  (Internal quotes and citations omitted.)  *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81.

{¶ 25} Murphy contends that the "alleged" victim in this case was "a person whose credibility [was] greatly suspect."  He asserts that she contradicted herself several times while testifying.  He further claims that although the victim had closed eyes in the photos, "she could have been resting," claiming that she consented to the acts as she had regularly done in the past.

{¶ 26} First, we disagree that the victim contradicted herself.  She was clear and consistent throughout her testimony.  Second, even if the victim consented to similar acts in the past when she was awake does not mean she did so on this occasion.  The victim testified that she was sleeping when Murphy committed the acts against

her. The jury certainly believed the victim. And after independently reviewing the photos, we also believe that the victim was sleeping. The pictures strongly indicate that the victim was sleeping based upon the positions she was in and the placement of her arms. She was clearly "dead weight."

{¶ 27} Further, while a reviewing court considers the credibility of the witnesses in a weight of the evidence review, "that review must nevertheless be tempered by the principle that weight and credibility are primarily for the trier of fact," in this case the jury, as they are in "the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Kash,* 1st Dist. No. CA2002-10-247, 2002-Ohio-415, ¶25, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶ 28} Murphy further contends that the victim's "story," and the state's theory, that Murphy drugged the victim by putting something in her water, is not credible. We disagree. But also, the state did not have to prove that Murphy drugged the victim. To establish that a person is guilty of sexual battery under R.C. 2907.03(A)(2), the state had to prove that Murphy engaged in sexual conduct with the victim, knowing the victim's "ability to appraise the nature of or control [her] own conduct [was] substantially impaired." Thus, the state simply had to prove that the victim was substantially impaired such that her ability to resist or

consent to sexual conduct was diminished, and that Murphy was aware of the victim's substantial impairment. The state did so in this case.

{¶ 29} Accordingly, after reviewing the entire record, we conclude that this case is not the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Murphy's second assignment of error is overruled.

<u>Allied Offenses</u>

{¶ 30} In his third assignment of error, Murphy contends that his four acts of sexual battery were allied offenses of similar import and should have been merged for purposes of sentencing. We disagree.

{¶ 31} We review the issue of whether two offenses are allied under a de novo standard of review. See *State v. Young*, 2d Dist. No. 23438, 2010-Ohio-5157.

{¶ 32} "The double jeopardy clauses of both the United States and Ohio Constitutions protect 'an individual against successive punishments as well as successive prosecutions for the same offense.' *State v. Moore* (1996), 110 Ohio App.3d 649, 652, 675 N.E.2d 13 (citations omitted). 'Ohio's allied offenses statute, R.C. 2941.25, protects against multiple punishments for the same criminal conduct in violation of the Double Jeopardy Clauses of the United States and Ohio Constitutions.' Id. at 653, 675 N.E.2d 13." *State v. Lowery*, 11th

Dist. No. 2007-T-0085, 2008-Ohio-1896, ¶11. In the committee comment to R.C. 2941.25, the drafters explained that "the basic thrust of the section is to prevent 'shotgun' convictions."

**{¶ 33}** R.C. 2941.25 provides:

**{¶ 34}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶ 35}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶ 36}** In the recent Ohio Supreme Court case, *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the court thoroughly reviewed its "difficult *** jurisprudence on allied offenses" from 1971 to the present. See id. at ¶7 - 40. But most notably, in *Johnson*, the Supreme Court finally overruled *State v. Rance,* 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, where it had held that courts should compare the statutory elements in the abstract. *Johnson* at paragraph one of the syllabus. The Supreme Court explained that *Rance* had ignored the mandates of R.C. 2941.25, "which expressly instructs courts to consider the offenses at issue in light of the defendant's conduct." *Johnson* at ¶46.

{¶ 37} In *Johnson*, the Supreme Court explained that "whether offenses are allied offenses of similar import under R.C. 2941.25(A) *** is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. *** If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import." (Internal citations omitted.) Id. at ¶48.

{¶ 38} Then, "[i]f the multiple offenses *can be* committed by the same conduct, then the court must determine whether the offenses *were* committed by the same conduct, i.e., 'a single act, committed with a single state of mind.'" Id. at ¶49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, ¶50 (Lanzinger, J., dissenting).

{¶ 39} "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." Id. at ¶50.

{¶ 40} "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." Id. at ¶51.

{¶ 41} Here, there were four separate acts of sexual battery. There was one act where Murphy placed his fingers inside the victim's vagina and anus at the same time. He then stopped and took a photo. There was a separate and distinct act where he only placed his

fingers in her vagina. He then stopped and took a photo. And there were two separate acts, where he stopped and took photos in between, when Murphy inserted a purple dildo and a glass one into the victim's anus. The facts establish that these acts were not a single, continuous sexual act. Accordingly, the trial court was correct when it found that the four counts of sexual battery were not allied offenses of similar import.

**{¶ 42}** Murphy's third assignment of error is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY J. BOYLE, JUDGE

PATRICIA ANN BLACKMON, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR