[Cite as *State v. Cotton*, 2019-Ohio-4710.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2019CA0003 |
| JERMAINE L. COTTON | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Criminal appeal from the Richland County
                             Court of Common Pleas, Case No.
                             2018CR0390R

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      November 14, 2019

APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GARY BISHOP                               JOHN C. O'DONNELL III
Prosecuting Attorney                      10 West Newlon Place
By: JOSEPH SNYDER                         Mansfield, OH 44902
38 South Park Street
Mansfield, OH 44902

*Gwin, P.J.*

{¶1}　Defendant-appellant Jermaine L. Cotton ["Cotton"] appeals his convictions and sentences after a jury trial in the Richland County Court of Common Pleas.

*Facts and Procedural History*

{¶2}　On January 27, 2018, Officer Mark Boggs was on patrol in Mansfield, Ohio. Officer Boggs noticed a gray sedan parked in a corner spot towards the rear of 287 Cline Avenue with someone seated in the driver's seat.　The car was parked closest to Apartment D at the Chelsea Square Apartments.　Officer Boggs turned into the parking lot of the apartment complex and the vehicle he was observing suddenly left the lot.　As Officer Boggs was beginning to turn around, the vehicle went to a different apartment in the same complex, parked, and the driver left the vehicle and went into an apartment. Officer Boggs drove down the street to a parking lot where he could still observe the Chelsea Square Apartments and began doing paperwork on another case.

{¶3}　Officer Boggs was dispatched to a non-emergency call across town.　As Officer Boggs was leaving and driving down Cline Avenue, he saw the same gray sedan with Cotton and Kelly Adkins standing on the passenger's side and another individual in the driver's seat.　Officer Boggs knew Cotton and Ms. Adkins to have active warrants for their arrests.　As Officer Boggs pulled into the parking lot, he saw Dustin Daniels enter the apartment complex at 287 Cline Avenue.　Officer Boggs pulled back into the Chelsea Square Apartments parking lot and pulled into a spot parallel to the gray sedan on the driver's side.　Officer Boggs approached the driver's side of the vehicle and started talking to the driver, whom he identified as James Benjamin.　Officer Boggs asked Benjamin if he had anything illegal on him.　Benjamin stated that he did not and was then asked by

Officer Boggs to step out of the car. Benjamin got out of the car. Officer Boggs asked for permission to search Benjamin. Benjamin consented to a search of his person by Officer Boggs.

{¶4} Benjamin faced the driver side door of the car and placed his hands upon the vehicle. Officer Boggs, while standing behind Benjamin saw Cotton approach the passenger side door of the car and press his midsection against the door. Officer Boggs could not see Cotton's hands because Cotton was keeping his hands down. Cotton began moving his arms up and down and from Officer Boggs' perspective, it looked like he was reaching in and out of his pocket. Officer Boggs was concerned that Cotton could be reaching for a weapon. Officer Boggs told Cotton to stop moving and let him see his hands. After being asked a second time, Cotton complied and showed his hands. When Officer Boggs finished searching Benjamin, he told Benjamin to stand by the front of the car. As Officer Boggs began to walk around the car, Cotton backed away from the vehicle. Officer Boggs then asked Cotton to come to him. Officer Boggs and Cotton met at the trunk of the car.

{¶5} Officer Boggs told Cotton to put his hands on the trunk and asked him if he had any weapons or anything that would hurt the officer on him. Cotton told Officer Boggs that he had syringes in one of his pockets but did not know which one. Officer Boggs then asked Cotton if he could search his pockets and Cotton consented. [2ST. at 42; 3JT. at 379].[1] Officer Boggs then placed Cotton in handcuffs. [Id.]. Officer Boggs found four syringes, a bag of crystalline substance, and $891 in the pockets of Cotton. Cotton

---

[1] The Suppression hearing that occurred on January 7, 2019 is contained in Volume 2 of the transcript beginning at page 28. For clarity, it will be referred to as "2ST."; the jury trial, which began on January 7, 2019, begins at Volume 3 of the transcript at page 120. For clarity, the jury trial will be referred to by Volume and page number as "JT."

told Officer Boggs that he had just found the substance that day while he was cleaning. At trial, Cotton admitted to buying the methamphetamine with the intent to use it. [5JT. at 590].

{¶6} Sergeant Sara Mosier-Napier arrived and exited her cruiser on the driver's side of the gray car. She looked under the car and said, "What is that." Cotton then declared, "Those aren't my drugs." Officer Boggs then looked under the car and saw two large clear bags, containing what appeared to be drugs. The bags were three to five inches underneath the car. Cotton was placed in the rear of Officer Boggs' cruiser.

{¶7} Additional officers arrived and Adkins was arrested on an outstanding warrant. Police then entered her apartment and arrested Dustin Daniels on an outstanding warrant.

{¶8} Inside the bags that were retrieved from underneath the grey car, police found heroin, cocaine, marijuana and buprenorphine. The drugs were packaged in smaller bags tied with a large knot at the top. When the bags of drugs were retrieved, they were found to be dry even though the ground was wet as there had been misting rain throughout the day.

{¶9} The crystalline substance found in Cotton's pocket tested positive as methamphetamine weighing 2.8 grams. The two bags of drugs found underneath the grey car were found to contain cocaine, heroin, cyclopropyl fentanyl, marijuana, and buprenorphine. Police found a combined total of 20.69 grams of cocaine. Police also found a combined total of 8.57 grams of heroin, .64 grams of cyclopropyl fentanyl, 3.11 grams of marijuana, and 2.01 grams of buprenorphine.

{¶10} Cotton testified during the suppression hearing and during his jury trial. Cotton claimed that he and Adkins were walking toward her car in the parking lot when they saw Officer Boggs approach. Cotton testified that they were ordered to stop by Officer Boggs and come back to the grey sedan. Cotton testified that Dustin Daniels got out of the grey vehicle and ran towards the apartments.

{¶11} Cotton testified that the money in his pockets came from work and a $500.00 prize from a scratch off lottery ticket. Cotton testified that when Sergeant Mosier-Napier intimated that the bags of drugs underneath the gray car were probably his, Cotton responded, "Those aren't my drugs."

{¶12} On rebuttal, Officer Boggs testified that he had previously been called to the Chelsea Square apartment complex because Ms. Adkin's grey SUV had broken down and was blocking the roadway. Officer Boggs helped get it off the roadway and into a parking spot at the complex. On January 27, 2019, Officer Boggs saw the SUV to be in the same location and in the same condition as he had previously witnessed.

{¶13} On May 21, 2018, Cotton was indicted in a thirteen-count indictment in the Richland County Court of Common Pleas. Count One charged Cotton with Possession of Cocaine, a felony of the second-degree in violation of R.C. 2925.11(A) and (C)(4)(d). Count Two charged Cotton with Trafficking of Cocaine, a felony of the second-degree in violation of R.C. 2925.11(A)(2) and (C)(4)(e). Count Three charged Cotton with Possession of Heroin, a felony of the third degree in violation of R.C. 2925.11(A) and (C)(6)(c). Count Four charged Cotton with Trafficking of Heroin, a felony of the third degree in violation of R.C. 2925.03(A)(2) and (C)(6)(d). Count Five charged Cotton with Aggravated Possession of Drugs, a felony of the fifth degree in violation of R.C.

2925.11(A) and (C)(1)(a). Count Six charged Cotton with Aggravated Trafficking in Drugs, a felony of the fourth degree in violation of R.C. 2925.03(A)(2) and (C)(1)(a). Count Seven charged Cotton with Aggravated Possession of Drugs, a felony of the fifth-degree in violation of R.C. 2925.11(A) and (C)(1)(a). Count Eight charged Cotton with Aggravated Trafficking in Drugs, a felony of the fourth-degree in violation of R.C. 2925.03(A)(2) and (C)(1)(a). Count Nine charged Cotton with Possession of Drugs, a felony of the fifth-degree in violation of R.C. 2925.11(A) and (C)(2)(a). Count Ten charged Cotton with Trafficking in Drugs, a felony of the fifth-degree in violation of R.C. 2925.03(A)(2) and (C)(2)(a). The trial court granted Cotton's motion to dismiss Count Eleven and Count Twelve prior to the end of trial. Count Thirteen charged Cotton with Tampering with Evidence, a felony of the third degree, in violation of R. C. 2921.12(A)(1).

{¶14} Cotton filed a motion to suppress that was heard on January 7, 2019. The trial court overruled the motion by Judgment Entry filed January 8, 2019 [Docket Number 74].

{¶15} The jury found Cotton guilty of Counts One through Ten and Count Thirteen. The trial court sentenced Cotton to a total of fourteen years and nine months.

*Assignments of Error*

{¶16} Cotton raises four Assignments of Error,

{¶17} "I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT/APPELLANT'S MOTION TO SUPPRESS.

{¶18} "II. THE JURY VERDICT OF POSSESSION OF ILLEGAL SUBSTANCES OTHER THAN THE METHAMPHETAMINES FOUND ON HIS PERSON WAS AGAINST THE WEIGHT OF THE EVIDENCE.

{¶19} "III. THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE FIFTH AND SIXTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.  THE COURT COMMITTED PLAIN ERROR ALLOWING THE ARRESTING OFFICER TO FIVE [SIC] HIS OPINION DRUG TRAFFICKING.

{¶20} "IV. THE VERDICT OF TAMPERING WITH EVIDENCE WAS AGAINST THE WEIGHT OF THE EVIDENCE."

I.

{¶21} In his First Assignment of Error, Cotton contends that the trial court erred by overruling his motion to suppress. Specifically, Cotton contends that Officer Boggs did not have a reasonable, articulable suspicion that Cotton was armed.  Therefore, Cotton argues the pat-down search of his person was illegal.  [Appellant's Brief at 5].

**STANDARD OF APPELLATE REVIEW.**

{¶22} Appellate review of a motion to suppress presents a mixed question of law and fact.  *State v. Burnside*, 100 Ohio St.3d 152, 154-155, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.  When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate witness credibility.  *See State v. Dunlap*, 73 Ohio St.3d 308,314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).  Accordingly, a reviewing court must defer to the trial court's factual findings if competent, credible evidence exists to support those findings.  *See Burnside, supra; Dunlap, supra; State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1(4th Dist. 1998); *State v. Medcalf*, 111 Ohio App.3d 142, 675 N.E.2d 1268 (4th Dist. 1996).  However, once this Court has accepted those facts as

true, it must independently determine as a matter of law whether the trial court met the applicable legal standard. *See Burnside, supra, citing State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539(4th Dist. 1997); *See, generally, United States v. Arvizu*, 534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740(2002); *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911(1996). That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review *Ornelas*, supra. Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas, supra* at 698, 116 S.Ct. at 1663.

**ISSUE FOR APPEAL**.

*Whether the officer's search of Cotton's pockets was constitutionally permissible.*

{¶23} Officer Boggs testified at the suppression hearing that he recognized Cotton and knew that he had a felony arrest warrant out of Richland County. [2ST. at 59]. Officer Boggs testified that he feared for his safety because he could not see Cotton's hands while Cotton was next to the passenger door of the grey car. [2ST. at 69]. Officer Boggs further testified that he asked Cotton if he had any weapons or anything that would hurt the officer on him. Cotton told Officer Boggs that he had syringes in one of his pockets but did not know which one. Officer Boggs then asked Cotton if he could search his pockets and Cotton consented. [2ST. at 42; 3JT. at 379]. Officer Boggs then placed Cotton in handcuffs. [Id.]. Cotton testified at the suppression hearing that he did not recall whether Officer Boggs asked if he could search Cotton's pockets. [2ST. at 88].

{¶24} No Fourth Amendment violation occurs when an individual voluntarily consents to a search. See *United States v. Drayton*, 536 U.S. 194, 207, 122 S.Ct. 2105, 153 L.Ed.2d 242(2002) (stating that "[p]olice officers act in full accord with the law when

they ask citizens for consent"); *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854(1973) ("[A] search conducted pursuant to a valid consent is constitutionally permissible"); *State v. Comen*, 50 Ohio St.3d 206, 211, 553 N.E.2d 640(1990). In *Schneckloth,* the United States Supreme Court acknowledged the importance of consent searches in police investigations, noting that "a valid consent may be the only means of obtaining important and reliable evidence" to apprehend a criminal. Id. at 227-228. See, *State v. Fry*, 4th Dist. Jackson No. 03CA26, 2004-Ohio-5747 at ¶18. The United States Supreme Court further noted: "[w]hile most citizens will respond to a police request, the fact that people do so, and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." *INS v. Delgado,* 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247(1984); *Drayton*, supra, 536 U.S. at 205, 122 S.Ct. at 2113. Moreover, a voluntary consent need not amount to a waiver; consent can be voluntary without being an "intentional relinquishment or abandonment of a known right or privilege." *Schneckloth v. Bustamonte,* 412 U.S. 218, 235, 93 S.Ct. 2041, 36 L.Ed.2d 854(1983) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461(1938)); *State v. Barnes*, 25 Ohio St.3d 203, 495 N.E.2d 922(1986); *State v. McConnell*, 5th Dist. Stark No. 2002CA00048, 2002-Ohio-5300 at ¶8. Rather, the proper test is whether the totality of the circumstances demonstrates that the consent was voluntary. Id. Further, "[v]oluntary consent, determined under the totality of the circumstances, may validate an otherwise illegal detention and search." *State v. Robinette*, 80 Ohio St.3d 234, 241, 685 N.E.2d 762(1997). The voluntariness of a consent to a search is a question of fact and will not be reversed on appeal unless clearly erroneous. *State v. Clelland*, 83 Ohio App.3d 474, 615 N.E.2d 276(4th Dist. 1992).

{¶25} In *State v. Mills*, 62 Ohio St.3d 357, 582 N.E.2d 972 (1992), the Ohio Supreme Court noted that the evaluation of evidence and the credibility of the witnesses are issues for the trier of fact in the hearing on the motion to suppress. Id. at 366, 582 N.E.2d at 981-982. The court of appeals is bound to accept factual determinations of the trial court made during the suppression hearing so long as they are supported by competent and credible evidence. An appellate court's role in reviewing a trial court's ruling on a motion to suppress is not to reevaluate the evidence or the credibility of the witnesses, *State v. Mills*, 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 981-82(1992), but to determine whether the trial court's application of the law to the facts, as the trial court found them to be, is appropriate. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141(4th Dist. 1993), *overruled on other grounds as stated in Village of McComb v. Andrews,* 3rd Dist. Hancock No. 5-99-41,2000 WL 296078 (Mar. 22, 2000). Cotton cites to no evidence in the record to support his assertion that Officer Boggs handcuffed him before asking permission to search him or that no consent was given before the search. [Appellant's Brief at 5].Cotton cites to page 42 of the testimony of Officer Boggs during the suppression hearing. However, the following exchange occurred during the hearing,

A. At this time, I placed him in handcuffs. I told him I was just detaining him as I attempted to find the syringes.

Q. Okay. Did you ask him if you were able to search his pockets?

A. Yes.

Q. What was his response?

A. Yes.

Q. And do you recall if you placed him in handcuffs after you asked him if you could search his pockets or before?

A. It was after.

2ST. at 42.

{¶26} Under the totality of the circumstances, we find the trial court's decision that Cotton consented to the search of his pockets is supported by competent, credible evidence in the form of Officer Boggs's testimony. Cotton's testimony that he did not remember if he gave Officer Boggs permission to search him is insufficient to discredit the trial court's reliance upon Officer Boggs's testimony.

{¶27} Cotton's First Assignment of Error is overruled.

II. & IV.

{¶28} In his Second Assignment of Error, Cotton argues that jury's verdict finding him guilty of possessing the drugs that were found underneath the grey car is against the manifest weight of the evidence[2].

{¶29} In his Fourth Assignment of Error, Cotton argues that his conviction for tampering with evidence is against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

{¶30} *Sufficiency of the Evidence.*

{¶31} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of

---

[2] Although Cotton's Second and Fourth Assignments of Error are phrased in terms of "manifest weight," he also seems to argue a lack of evidence, thereby raising a sufficiency of the evidence claim. [Appellant's Brief at 6; 9].

a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. 99, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶32} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *Walker,* ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis,* 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery,* 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

**ISSUE FOR APPEAL**

*A. Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."*

**1. Possession of drugs found underneath the grey car.**

{¶33} Cotton argues that both he and Adkins were standing in a position to have placed the drugs underneath the grey car when Officer Boggs pulled up to investigate. [Appellant's Brief at 6]. He further contends that there was no testimony that anyone saw him with the drugs. [Id.].

{¶34} R.C. 2925.01(K) defines possession as follows: " 'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D) (1).

{¶35} Possession may be actual or constructive. *State v. Butler*, 42 Ohio St.3d 174, 176, 538 N.E.2d 98(1989). To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. *State v. Wolery*, 46 Ohio St.2d 316, 332, 348 N.E.2d 351(1976). Dominion and control may be proven by circumstantial evidence alone. *State v. Trembly*, 137 Ohio App.3d 134, 738 N.E.2d 93 (8th Dist. 2000). Circumstantial evidence that the defendant was located

in very close proximity to the contraband may show constructive possession. *State v. Butler*, supra; *State v. Morales*, 5th Dist. Licking No.2004 CA 68, 2005-Ohio-4714, ¶ 50. Ownership of the contraband need not be established in order to find constructive possession. *State v. Smith*, 9th Dist. Summit No. 20885, 2002-Ohio-3034, ¶13. Furthermore, possession may be individual or joint. *Wolery,* 46 Ohio St.2d at 332, 348 N.E.2d 351. Multiple individuals may constructively possess a particular item simultaneously*. State v. Pitts*, 4th Dist. Scioto No. 99 CA 2675, 2000-Ohio-1986. The Supreme Court has held that knowledge of illegal goods on one's property is sufficient to show constructive possession. *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362, 1365(1982), *certiorari denied* (1982), 459 U.S. 870, 103 S.Ct. 155, 74 L.Ed.2d 130.

{¶36} If the state relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "'such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" *State v. Jenks*, 61 Ohio St. 3d 259, 272, 574 N.E. 2d 492(1991) at paragraph one of the syllabus. "'Circumstantial evidence and direct evidence inherently possess the same probative value [.]'" *Jenks*, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "'[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" *Jenks*, 61 Ohio St. 3d at 272, 574 N.E. 2d 492.

{¶37} In *Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777(1979), the United States Supreme Court upheld a statute which provided that the presence in an automobile, other than a public one, of a firearm "is presumptive evidence

of its possession by all persons occupying such automobile at the time except (a) where the firearm is found upon the person of an occupant, (b) where the automobile is being operated for hire by a licensed operator or (c) if the weapon is a handgun and one of the occupants, not present under duress, has a license to have a handgun." Id. at 442 U.S. 142-143, 99 S.Ct. 2217.  The Court noted that the presumption was not a mandatory; rather it was a permissive inference available only in certain circumstances.  Further, the jury could ignore the presumption even if there was no affirmative proof offered in rebuttal by the accused.  Id. at 160-162, 99 S.Ct. at 2226-2227.  Finally, the trial judge in *Allen* explained, "that possession could be actual or constructive, but that constructive possession could not exist without the intent and ability to exercise control or dominion over the weapons."  Id. at 161, 99 S.Ct. at 2226.

{¶38}   A review of the record in this case viewing the totality of the circumstances we find that the evidence supports a finding that Cotton possessed the drugs found underneath the grey car.

{¶39}   Officer Boggs testified that as he was conducting the pat down of the driver of the grey car, he could see Cotton press up against the car.  Officer Boggs saw Cotton's arms moving up and down; however, he was unable to see Cotton's hands.  When Sargent Moiser-Napier looked underneath the car, Cotton decaled, "Those aren't my drugs."

{¶40}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Cotton had exercised dominion and control over the drugs that the officers found underneath the grey car.

**{¶41}** We hold, therefore, that the state met its burden of production regarding each element of the crime of possession and, accordingly, there was sufficient evidence to submit the charges to the jury and to support Cotton's convictions.

### *2. Tampering with Evidence by placing the drugs underneath the gray car.*

**{¶42}** Cotton was also convicted of tampering with evidence, in violation of R.C. 2921.12(A)(1), which provides:

> No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation.

**{¶43}** "There are three elements of this offense: (1) the knowledge of an official proceeding or investigation in progress or likely to be instituted, (2) the alteration, destruction, concealment, or removal of the potential evidence, (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation." *State v. Straley*, 139 Ohio St.3d 339, 2014–Ohio–2139, 11 N.E.3d 1175, ¶11. A conviction for tampering with evidence pursuant to R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding. Likelihood is measured at the time of the act of alleged tampering. *Straley*, ¶19.

**{¶44}** Under the totality of the circumstances, the state presented evidence that Cotton placed the drugs underneath the grey car as Officer Boggs was patting down the

driver of the car.  As previously noted, Officer Boggs saw Cotton's arms moving up and down; however, he was unable to see Cotton's hands.  When Sargent Moiser-Napier looked underneath the car, Cotton declared, "Those aren't my drugs."

{¶45}  Thus, evidence was presented that the drugs were concealed at a time when law enforcement was investigating the activities in the parking lot involving the grey car.

{¶46}  Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Cotton placed the drugs underneath the grey car in an effort to impede the investigation.

{¶47}  We hold, therefore, that the state met its burden of production regarding each element of the crime of tampering with evidence and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Cotton's conviction.

*Manifest weight of the evidence.*

{¶48}  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶49} The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve. *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶50} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**ISSUE FOR APPEAL.**

*B.    Whether the jury court clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶51} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574

N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶52} In the case at bar, the jury heard the witnesses, viewed the evidence and heard both Officer Boggs and Cotton subject to cross-examination. The jury further heard Cotton's arguments and explanations about his actions. Thus, a rational basis exists in the record for the jury's decision.

{¶53} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Cotton's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Cotton's guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Cotton of possession of drugs and tampering with evidence for the drugs found underneath the grey car.

{¶54} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which Cotton was convicted.

{¶55} Cotton's Second and Fourth Assignments of Error are overruled.

III.

{¶56} In his Third Assignment of Error, Cotton maintains that he received ineffective assistance of trial counsel. Specifically, Cotton contends that he was

prejudiced by his attorney's failure to object to Officer Boggs "testifying as an expert in drug trafficking." [Appellant's Brief at 8-9].

**STANDARD OF APPELLATE REVIEW.**

{¶57} To obtain a reversal of a conviction based on ineffective assistance of counsel, the defendant must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 687–688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693(1984). A defendant's failure to satisfy one prong of the Strickland test negates a court's need to consider the other. *Strickland* at 697, 104 S.Ct. at 2069, 80 L.Ed.2d at 699; *State v. Madrigal*, 87 Ohio St.3d 378, 2000-Ohio-448, 721 N.E.2d 52 (2000).

{¶58} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶59} We note that any error will be deemed harmless if it did not affect the accused's "substantial rights." Before constitutional error can be considered harmless, we must be able to "declare a belief that it was harmless beyond a reasonable doubt." *United States v. Chapman,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705(1967). Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal. *State v. Conway,* 108

Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶78, citing *Chapman; State v. Lytle*, 48 Ohio St.2d 391, 358 N.E.2d 623(1976), paragraph three of the syllabus, *vacated in part on other grounds Lytle v. Ohio,* 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154(1978).See also, *State v. Jones*, 135 Ohio St.3d 10, 2012-Ohio-5677, 984 N.E.2d 948, ¶177.

**ISSUE FOR APPEAL.**

*Whether Cotton was prejudiced by trial counsel's failure to object to Officer Boggs's testimony concerning drug trafficking.*

**{¶60}** "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears*, 86 Ohio St.3d 329, 347, 715 N.E.2d 136 (1999), *quoting State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831(1988) *Accord, State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶233. A defendant must also show that he was materially prejudiced by the failure to object. *Holloway*, 38 Ohio St.3d at 244, 527 N.E.2d 831.

**{¶61}** In *State v. Crotts,* the Ohio Supreme Court explained,

As a legal term, "prejudice" is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218. Thus, it is fair to say that all relevant evidence is prejudicial. That is, evidence that tends to disprove a party's rendition of the facts necessarily harms that party's case. Accordingly, the rules of evidence do not attempt to bar all prejudicial evidence—to do so would make reaching any result extremely difficult. Rather, only evidence that is unfairly prejudicial is excludable.

"'Exclusion on the basis of unfair prejudice involves more than a balance of mere prejudice. If unfair prejudice simply meant prejudice,

anything adverse to a litigant's case would be excludable under Rule 403. Emphasis must be placed on the word "unfair." Unfair prejudice is that quality of evidence which might result in an improper basis for a jury decision. Consequently, if the evidence arouses the jury's emotional sympathies, evokes a sense of horror, or appeals to an instinct to punish, the evidence may be unfairly prejudicial. Usually, although not always, unfairly prejudicial evidence appeals to the jury's emotions rather than intellect.' " *Oberlin v. Akron Gen. Med. Ctr.* (2001), 91 Ohio St.3d 169, 172, 743 N.E.2d 890, *quoting Weissenberger's Ohio Evidence* (2000) 85–87, Section 403.3.

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 23-24.

**{¶62}** The distinction between lay and expert witness opinion testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning that only specialists in the field can master. *State v. McKee*, 91 Ohio St.3d 292, 744 N.E.2d 737(2001).

**{¶63}** Evid. R. 701 states: "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Officer Boggs had firsthand knowledge of drug trafficking and drug abuse cases in which he participated. Having met the firsthand knowledge requirement of Rule 701(1), the testimony of Officer Boggs was admissible if it would help the jury to resolve a disputed fact. In the case at

bar, Cotton was charged with trafficking in drugs in that he was aware the drugs were "intended for sale or resale."

Appellate courts have determined that some testimony offered by officers/detectives is lay person witness testimony even though it is based on the officer/detective's specialized knowledge. *State v. McClain*, 6th Dist. No. L-10-1088, 2012-Ohio-5264, ¶ 13 (Detective's testimony that quantities of narcotics recovered during the execution of the search warrant suggested that they were for sale as opposed to personal use was admissible under Evid.R. 701 as lay person opinion testimony. Detective's testimony was based on fact that 16 year veteran officer who has been assigned to narcotics and vice unit for 12 years; testimony was based on his perception and experience as a police officer.); *State v. Primeau*, 8th Dist. No. 97901, 2012-Ohio-5172, ¶ 71-75 (Officer, without medical expertise, was permitted to testify about his observation of the lacerations on appellant's hand. The court stated that description was based on his previous investigations of assaults and his perception of appellant's lacerations at that time. Thus, the testimony was proper under Evid.R. 701.); *State v. Williams*, 9th Dist. No. 25716, 2011-Ohio-6604, ¶ 11 (Officer's testimony that place definitely was a methamphetamine lab was based on personal observation from items taken from garbage and found in the house. It was proper testimony under Evid.R. 701.); *State v. Cooper*, 8th Dist. No. 86437, 2006-Ohio-817, ¶ 18 (In forgery case, detective permitted under Evid.R. 701 to testify based

on his experience as a police officer, his [previous] investigations of forgeries and his perception of the handwriting samples at issue.).

*State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 57.

**{¶64}**  In the case at bar, the state never asked the trial court to declare Officer Boggs an expert witness.  Nor did the state ask Officer Boggs to give an expert opinion.  Rather, Officer Boggs' testimony was based upon his training and experience.  Officer Boggs testified that he responded to numerous drug overdoses and other drug related offenses throughout his career.  The fact that he had only two years of experience goes to the weight not the admissibility of the evidence.

**{¶65}**  In *State v. Batin*, 5th Dist. Stark No. 2004–CA–00128, 2005–Ohio–36, this Court held that "[t]he appellant's possession of a large amount of crack cocaine [13.45 grams], both cut and uncut, as well as his possession of a large sum of money [$432] permitted the jury to draw the logical inference that he was involved in the distribution of drugs.  Likewise, the lack of any cocaine smoking paraphernalia on his person at the time of his arrest suggested that the drugs he possessed were not for personal use."  Id. at ¶ 24.  In the case at bar, a rational trier of fact could have found the essential elements of trafficking were proven beyond a reasonable doubt.  A jury could infer the large amount of heroin, 8.5 grams, the 20.69 grams of cocaine, and the .64 grams of cyclopropyl fentanyl, and the large sum of money found on Cotton's person suggested that the drugs were not for Cotton's personal use.

**{¶66}**  There is no evidence that indicates the result of the trial was unreliable or the proceeding was fundamentally unfair as a result of defense counsel's failure to object to Officer Boggs's testimony regarding drug trafficking.  We are persuaded that the

outcome of this case would not have been different had portions of Officer Boggs's testimony been objected to and deleted at trial.

{¶67} Cotton's Third Assignment of Error is overruled.

{¶68} For the foregoing reasons, the judgment of the Richland County Court of Common Pleas is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Wise, John, J., concur